**Date: 12/2/2022**

U.S. BANKRUPTCY COURT
FILED
TRENTON, NJ
DEC 2, 2022

**To: ALBERT RUSSO CH. 13 STANDING TRUSTEE OF USBC IN TRENTON
NJ UNDER THE US DEPARTMENT OF JUSTICE TRUSTEE PROGRAM**

**I AM REPORTING A SERIOUS FEDERAL CRIME BY JENELLE C. ARNOLD AND
DENISE CARLON FOR   FILING A FRAUDULENT AND FABRICATED PROOF OF
CLAIM (POC) PURPORTED TO BE ON BEHALF OF BAYVIEW LOAN SERVICING
LLC (BAYVIEW)**

1- My name is Reza Farzan. I am reporting a serious crime by
Jenelle C. Arnold for filing a fraudulent and fabricated
POC purported to be on behalf of Bayview on 3/5/2020.
Jenelle C. Arnold and Bayview are complete and absolute
strangers to any note/claim between me and any one of them;
including the alleged note they entered in this POC.

2- The clear undeniable and indisputable evidence is the self
incriminating documents that they filed under this POC in
this docket on my bankruptcy case, on 3/5/20, in the United
States Federal Court case 19-29256-CMG.

3- On 11/18/22 I obtained a certified copy of the said POC from
USBC in Trenton NJ which is attached.

4- Under the 2nd paragraph under Official Form 410 it is
stated:*"A person who files a fraudulent claim could be
fined up to $500,000, imprisoned for up to 5 years, or
both. 18 U.S.C. 152, 157, and 3571."*

5- On 3/5/2020 attorney Denise Carlon, purportedly on behalf of
Bayview filed a false Claim purporting to be a secured

1

creditor with the right of a note/claim holder under claim

2-1 in the Claim Register on the Docket of case 19-29256-

CMG.

**Part 1:**

6– Question 1: **"Who is the current creditor?"**
Her answer: **"Bayview Loan Servicing LLC, A Delaware Limited
Liability Company"**.

This answer is clearly false, based on their own executed

and filed documents. For the following undeniable facts:

first and mort fatal, there is no indorsement to any party

on any page whatsoever. Second, there is no authenticated

assignment of a note/claim from AMN to any party; showing a

transfer or sale of any note rights to any entity.

They filed a purported note showing AMN as the note holder.

There is no basis foundation evidence to support the false

claim of her answer to question # 1. This alone would be

enough clear and compelling evidence of fraud. But only

this gets worse from here for Jenelle Arnold and Denise

Carlon.

7– Question 2: **"Has this claim been acquired from someone
else?"**
Her answer: **"No"**

This answer crystallizes and confirms the facts that this

is a fraudulent POC. Answer # 1 alone and the documents

filed are the evidence of fraud and it is fatal to their

POC because it was filed by her. This is a false answer

2

based on her contradicting documents. There is no doubt whatsoever that this is a fraudulent claim. In fact there is absolutely no doubt that Jenelle Arnold and Denise Carlon self incriminating documents contradict this answer; evidencing clear fraud and attempted theft by them and others. If needed I have two corroborating witnesses and a certification from Brandie H. Peeples, MERS representative, who has certified that MERS did not transfer, assign, sell, negotiate, or give any possession of any note/claim/debt rights to any entity and specially not to Bayview. Thereby, there is absolutely no doubt that the filed POC is not only unlawful but also impossible.

8- MERS has certified to the state of NJ Judiciary that MERS does not have the authority and nor the capacity to transfer any note/claim in regard to my bankruptcy. What capacity MERS does have according to the judges of the supreme court of the state of Washington is "MERS has the capacity to deceive".

9- This report must stop all malicious prosecution againt me and my family and my residential property by Bayview, Nationstar, and others.

10- I was told to report to my case's trustee first next. So Please advise all interested parties. Please advise on the

next steps or hearings. If you need the witness please let
me know.


Respectfully Submitted

Reza Farzan
23 Twin Terrace
Holmdel NJ 07733
732-778-5047
raymondfarzan@gmail.com

SHAFIA QAMAR
Notary Public, State of New Jersey
My Commission Expires Jan 25, 2026

12|2|2022

CC: USBC clerk in Trenton NJ

    Consumer Financial Protection Bureau

    Director Martha Hildebrandt

4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

### CERTIFIED COPY

I, Jeanne A. Naughton, Clerk of the United States Bankruptcy Court, certify that the attached is a true and full copy of the original now existing among the records of this Court.

In testimony whereof I sign my name, and affix the seal of this Court at _____Trenton_____, in this State of New Jersey on November 18, 2022_____.



JEANNE A. NAUGHTON, Clerk

By: _____
        Deputy Clerk

*rev.1/4/17*

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Reza Farzan aka Ray Farzan aka Raymond Farzan fdba America's Consulting Enterprise, Inc. |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the: **District of New Jersey** (State)

Case number: 19-29256-CMG

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Bayview Loan Servicing, LLC, a Delaware Limited Liability Company
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Bayview Loan Servicing, LLC
Name

4425 Ponce De Leon Blvd., 5th Floor
Number        Street

Coral Gables        FL        33146
City        State        Zip Code

Contact phone    (866) 709-3400

Contact email

Where should payment to the creditor be sent? (if different)

Bayview Loan Servicing, LLC
Attn: Cashiering Dept.
Name

4425 Ponce De Leon Blvd., 5th Floor
Number        Street

Coral Gables        FL        33146
City        State        Zip Code

Contact phone    (866) 709-3400

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                                        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** Do you have any number you use to identify the debtor?

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor.                    ******3853

**7.** How much is the claim?    $ 596,468.17    Does this amount include interest or other charges?

☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9.** Is all or part of the claim secured?

☐ No
☒ Yes.  The claim is secured by a lien on property.

Nature of property:

☒ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe    23 Twin Terrace, Holmdel, New Jersey 07733

Basis for perfection:    Mortgage/Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for Example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $

Amount of the claim that is secured:    $ 596,468.17

Amount of the claim that is unsecured:    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7

Amount necessary to cure any default as of the date of the petition:    $ 120,913.79

Annual Interest Rate (when case was filed)    2.000    %
☒ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☒ No
☐ Yes.    Amount necessary to cure any default as of the date of the petition.    $

**11.** Is this claim subject to a right of setoff?

☒ No
☐ Yes.    Identify the property.

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    *3/5/2020*
                    MM / DD / YYYY

            */s/ Jenelle C. Arnold*
_____
            Signature

Print the name of the person who is completing and signing this claim:

| Name | Jenelle C. Arnold | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Title | Attorney | | |
| Company | Aldridge Pite, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4375 Jutland Drive, Suite 200 P.O. Box 17933 | | |
| | Number    Street | | |
| | San Diego, CA 92177-0933 | | |
| | City | State | ZIP Code |
| Contact phone | (858) 750-7600 | Email | jarnold@aldridgepite.com |

Bayview provides a dedicated team and toll-free number (855-657-7531) to better assist Chapter 13 Trustees with any questions or to contact Bayview.

(12/15)

# Mortgage Proof of Claim Attachment

Case 19-29256-CMG    Claim 2-1    Filed 03/05/20    Desc Main Document        Page 5 of 58

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 19-29256-CMG |
| Debtor 1: | Reza Farzan aka Ray Farzan aka Raymond Farzan fdba America's Consulting Enterprise, Inc. |
| Debtor 2: | |
| Last 4 digits to identify: | 3853 |
| Creditor: | Bayview Loan Servicing, LLC, a Delaware Limited Liability Company |
| Servicer: | Bayview Loan Servicing, LLC |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | 511,066.97* |
| Interest due: | 37,303.18 |
| Fees, costs due: | 9,925.28 |
| Escrow deficiency for funds advanced: | 38,172.74 |
| Less total funds on hand: | - 0.00 |
| Total debt: | 596,468.17 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | 67,343.46 |
| Prepetition fees due: | 9,925.28 |
| Escrow deficiency for funds advanced: | 38,172.74 |
| Projected escrow shortage: | 5,472.31 |
| Less funds on hand: | - 0.00 |
| Total prepetition arrearage: | 120,913.79 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | 1,320.46 |
| Monthly escrow: | 980.66 |
| Private mortgage insurance: | 0.00 |
| Total monthly payment: | 2,301.12 |

## Part 5: Loan Payment History from First Date of Default

Fixed accrual/daily simple interest/other:    Fixed Accrual

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| **See attached** | | | | | | | | | | | | | | | | |

Official Form 410    Mortgage Proof of Claim Attachment    244
Page 1 of

Case 19-29256-CMG    Claim 2-1    Filed 03/05/20    Desc Main Document        Page 6 of 58

Mortgage Proof of Claim Attachment

[12/15]

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees / charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Changes balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/2015 | $2,202.87 | | | Payment Due | 8/1/2015 | $2,202.87 | | | | | $- | $436,047.67 | | $(4,887.90) | $- | $- |
| 9/1/2015 | $2,202.87 | | | Payment Due | | $4,405.74 | | | | | $- | $436,047.67 | | $(4,887.90) | $- | $- |
| 10/1/2015 | $2,202.87 | | | Payment Due | | 6,608.61 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 11/1/2015 | $2,202.87 | | | Payment Due | | 8,811.48 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 12/1/2015 | $2,202.87 | | | Payment Due | | 11,014.35 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 1/1/2016 | $2,202.87 | | | Payment Due | | 13,217.22 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 2/1/2016 | $2,202.87 | | | Payment Due | | 15,420.09 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 3/1/2016 | $2,202.87 | | | Payment Due | | 17,622.96 | | | | | | $436,047.67 | | $(4,887.90) | $- | $- |
| 3/1/2016 | | | $14.00 | Property Inspection Fee | | 17,622.96 | | | | | | $436,047.67 | | $(4,887.90) | 14.00 | $- |
| 3/17/2016 | | | $1,042.50 | FC Fees | | 17,622.96 | | | | | | $436,047.67 | | $(4,887.90) | 1,056.50 | $- |
| 3/17/2016 | | | $425.00 | FC Costs | | 17,622.96 | | | | | | $436,047.67 | | $(4,887.90) | 1,481.50 | $- |
| 3/28/2016 | | | $14.00 | Property Inspection Fee | | 17,622.96 | | | | | | $436,047.67 | | $(4,887.90) | 1,495.50 | $- |
| 4/1/2016 | $2,202.87 | | | Payment Due | | 19,825.83 | | | | | | $436,047.67 | | $(4,887.90) | 1,495.50 | $- |
| 4/12/2016 | | | $14.00 | Property Inspection Fee | | 19,825.83 | | | | | | $436,047.67 | | $(7,078.30) | 1,509.50 | $- |
| 4/21/2016 | | $1,042.50 | | County Tax Advance | | 19,825.83 | | | $(2,190.40) | | | $436,047.67 | | $(7,078.30) | 1,509.50 | $- |
| 5/1/2016 | $2,202.87 | | | Payment Due | | 22,028.70 | | | | | | $436,047.67 | | $(7,078.30) | 2,552.00 | $- |
| 5/17/2016 | | | $250.00 | FC Costs | | 22,028.70 | | | | | | $436,047.67 | | $(7,078.30) | 2,602.00 | $- |
| 5/24/2016 | | | $40.00 | FC Costs | | 22,028.70 | | | | | | $436,047.67 | | $(7,078.30) | 2,816.00 | $- |
| 6/1/2016 | $2,202.87 | | | Payment Due | | 24,231.57 | | | | | | $436,047.67 | | $(7,078.30) | 2,816.00 | $- |
| 6/13/2016 | | | $14.00 | Property Inspection Fee | | 24,231.57 | | | | | | $436,047.67 | | $(7,078.30) | 2,830.00 | $- |
| 6/22/2016 | | | $347.50 | FC Fees | | 24,231.57 | | | | | | $436,047.67 | | $(7,078.30) | 3,177.50 | $- |
| 6/29/2016 | | | $52.80 | FC Costs | | 24,231.57 | | | | | | $436,047.67 | | $(7,078.30) | 3,230.30 | $- |
| 6/29/2016 | | | $394.70 | FC Costs | | 24,231.57 | | | | | | $436,047.67 | | $(7,078.30) | 3,625.00 | $- |
| 7/1/2016 | $2,202.87 | | | Payment Due | | 26,434.44 | | | | | | $436,047.67 | | $(7,078.30) | 3,625.00 | $- |
| 7/22/2016 | | | | Payment Due | | 28,434.44 | | | $(2,285.92) | | | $436,047.67 | | $(9,341.22) | 3,625.00 | $- |
| 7/25/2016 | | | $14.00 | Property Inspection Fee | | 28,434.44 | | | | | | $436,047.67 | | $(9,341.22) | 3,639.00 | $- |
| 8/1/2016 | $2,202.87 | | | Payment Due | | 28,637.31 | | | | | | $436,047.67 | | $(9,341.22) | 3,639.00 | $- |
| 8/24/2016 | | | $14.00 | Property Inspection Fee | | 28,637.31 | | | | | | $436,047.67 | | $(9,341.22) | 3,653.00 | $- |
| 9/1/2016 | $2,202.87 | | | Payment Due | | 30,840.18 | | | | | | $436,047.67 | | $(9,341.22) | 3,653.00 | $- |
| 9/13/2016 | | | $375.00 | FC Costs | | 30,840.18 | | | | | | $436,047.67 | | $(9,341.22) | 4,028.00 | $- |
| 9/13/2016 | | | $40.00 | FC Costs | | 30,840.18 | | | | | | $436,047.67 | | $(9,341.22) | 4,068.00 | $- |
| 9/13/2016 | | | $14.00 | Property Inspection Fee | | 30,840.18 | | | | | | $436,047.67 | | $(9,341.22) | 4,082.00 | $- |
| 10/1/2016 | $2,202.87 | | | Payment Due | | 33,043.05 | | | | | | $436,047.67 | | $(9,341.22) | 4,082.00 | $- |
| 10/12/2016 | | | $14.00 | Property Inspection Fee | | 33,043.05 | | | | | | $436,047.67 | | $(9,341.22) | 4,096.00 | $- |
| 10/26/2016 | | | | County Tax Advance | | 33,043.05 | | | $(2,262.91) | | | $435,047.67 | | $(11,604.13) | 4,096.00 | $- |
| 11/1/2016 | $2,202.87 | | | Payment Due | | 35,245.92 | | | | | | $436,047.67 | | $(11,604.13) | 4,096.00 | $- |
| 11/25/2016 | | | $14.00 | Property Inspection Fee | | 35,245.92 | | | | | | $436,047.67 | | $(11,604.13) | 4,110.00 | $- |
| 12/1/2016 | $2,202.87 | | | Payment Due | | 37,448.79 | | | | | | $436,047.67 | | $(11,604.13) | 4,110.00 | $- |
| 12/12/2016 | | | $175.00 | FC Costs | | 37,448.79 | | | | | | $436,047.67 | | $(11,604.13) | 4,285.00 | $- |
| 12/20/2016 | | | $14.00 | Property Inspection Fee | | 37,448.79 | | | | | | $436,047.67 | | $(11,604.13) | 4,285.00 | $- |
| 12/23/2016 | | | | Hazard Insurance Advance | | 37,448.79 | | | (976.75) | | | $436,047.67 | | $(12,560.88) | 4,285.00 | $- |
| 1/1/2017 | $2,202.87 | | | Payment Due | | 39,651.66 | | | | | | $436,047.67 | | $(12,560.88) | 4,299.00 | $- |
| 1/23/2017 | | | | County Tax Advance | | 39,651.66 | | | $(2,226.66) | | | $436,047.67 | | $(12,560.88) | 4,299.00 | $- |
| 2/1/2017 | $2,202.87 | | | Property Inspection Fee | | 39,651.66 | | | | | | $436,047.67 | | $(14,807.54) | 4,313.00 | $- |
| 2/17/2017 | | | $14.00 | Property Inspection Fee | | 41,854.53 | | | | | | $436,047.67 | | $(14,807.54) | 4,313.00 | $- |
| 2/23/2017 | $2,202.87 | | $14.00 | Property Inspection Fee | | 41,854.53 | | | | | | $436,047.67 | | $(14,907.54) | 4,327.00 | $- |

Case 19-29256-CMG    Claim 2-1    Filed 03/05/20    Desc Main Document    Page 7 of 58

(12/15)

Mortgage Proof of Claim Attachment

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | Description (Account Activity) | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | Amount to escrow | K. Amount to fees or charges | J. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/1/2017 | $2,202.87 | | | Payment Due | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $4,327.00 | - |
| 3/9/2017 | | | $175.00 | FC Fees | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $4,502.00 | - |
| 3/3/2017 | | | $525.00 | FC Fees | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $5,027.00 | - |
| 3/3/2017 | | | $437.50 | FC Fees | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $5,464.50 | - |
| 3/23/2017 | | | $1,750.00 | FC Fees | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $7,214.50 | - |
| 3/24/2017 | | | $375.00 | FC Fees | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $7,589.50 | - |
| 3/24/2017 | | | $50.00 | FC Costs | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $7,639.50 | - |
| 3/27/2017 | | | 14.00 | Property Inspection Fee | | $44,057.40 | | | | | | $436,047.67 | | $(14,807.54) | $7,653.50 | - |
| 4/1/2017 | $2,202.87 | | | Payment Due | | $46,260.27 | | | $ - | | | $435,047.67 | | $(17,034.20) | $7,653.50 | - |
| 4/13/2017 | | | | County Tax Advance | | $46,260.27 | | | $(2,226.66) | | | $436,047.67 | | $(17,034.20) | $7,653.50 | - |
| 4/20/2017 | | | 14.00 | Property Inspection Fee | | $46,260.27 | | | | | | $436,047.67 | | $(17,034.20) | $7,667.50 | - |
| 5/1/2017 | $2,202.87 | | | Payment Due | | $48,463.14 | | | | | | $436,047.67 | | $(17,034.20) | $7,667.50 | - |
| 5/17/2017 | | | 14.00 | Property Inspection Fee | | $48,463.14 | | | | | | $436,047.67 | | $(17,034.20) | $7,681.50 | - |
| 6/1/2017 | $2,202.87 | | | Payment Due | | $50,666.01 | | | | | | $436,047.67 | | $(17,034.20) | $7,681.50 | - |
| 6/20/2017 | | | 14.00 | Property Inspection Fee | | $50,666.01 | | | | | | $436,047.67 | | $(17,034.20) | $7,695.50 | - |
| 7/1/2017 | $2,202.87 | | | Payment Due | | $52,868.88 | | | | | | $436,047.67 | | $(17,034.20) | $7,695.50 | - |
| 7/25/2017 | | | 14.00 | Property Inspection Fee | | $52,868.88 | | | | | | $436,047.67 | | $(17,034.20) | $7,709.50 | - |
| 8/1/2017 | $2,202.87 | | | Payment Due | | $55,071.75 | | | | | | $436,047.67 | | $(17,034.20) | $7,709.50 | - |
| 8/1/2017 | | | (40.00) | Corp Adv Repay | | $55,071.75 | | | | | | $436,047.67 | | $(17,034.20) | $7,669.50 | - |
| 8/21/2017 | | | 14.00 | Property Inspection Fee | | $55,071.75 | | | $(2,391.36) | | | $436,047.67 | | $(19,425.55) | $7,683.50 | - |
| 9/1/2017 | $2,202.87 | | | Payment Due | | $57,274.62 | | | | | | $436,047.67 | | $(19,425.55) | $7,683.50 | - |
| 9/14/2017 | | | 192.50 | FC Fees | | $57,274.62 | | | | | | $436,047.67 | | $(19,425.55) | $7,876.00 | - |
| 9/20/2017 | | | 14.00 | Property Inspection Fee | | $57,274.62 | | | | | | $436,047.67 | | $(19,425.55) | $7,890.00 | - |
| 10/1/2017 | $2,202.87 | | | Payment Due | | $59,477.49 | | | | | | $436,047.67 | | $(19,425.55) | $7,890.00 | - |
| 10/25/2017 | | | 14.00 | Property Inspection Fee | | $59,477.49 | | | | | | $436,047.67 | | $(19,425.55) | $7,904.00 | - |
| 10/27/2017 | | | | County Tax Advance | | $61,680.36 | | | $(2,391.34) | | | $430,047.67 | | $(21,816.89) | $7,904.00 | - |
| 11/1/2017 | $2,202.87 | | | Payment Due | | $61,680.36 | | | | | | $436,047.67 | | $(21,816.89) | $7,904.00 | - |
| 11/21/2017 | | | 14.00 | Property Inspection Fee | | $61,680.36 | | | | | | $436,047.67 | | $(21,816.89) | $7,918.00 | - |
| 12/1/2017 | $2,202.87 | | | Payment Due | | $63,883.23 | | | | | | $436,047.67 | | $(21,816.89) | $7,918.00 | - |
| 12/15/2017 | | | 50.00 | FC Costs | | $63,883.23 | | | | | | $436,047.67 | | $(21,816.89) | $7,968.00 | - |
| 12/26/2017 | | | 14.00 | Property Inspection Fee | | $63,883.23 | | | | | | $436,047.67 | | $(21,816.89) | $7,982.00 | - |
| 1/1/2018 | $2,202.87 | | | Payment Due | | $66,086.10 | | | | | | $436,047.67 | | $(21,816.89) | $7,982.00 | - |
| 1/31/2018 | | | 14.00 | Property Inspection Fee | | $66,086.10 | | | | | | $436,047.67 | | $(21,816.89) | $7,996.00 | - |
| 2/1/2018 | $2,202.87 | | | Payment Due | | $68,288.97 | | | | | | $436,047.67 | | $(21,816.89) | $7,996.00 | - |
| 2/23/2018 | | | 14.00 | Property Inspection Fee | | $68,288.97 | | | | | | $436,047.67 | | $(21,816.89) | $8,010.00 | - |
| 3/1/2018 | $2,202.87 | | | Payment Due | | $70,491.84 | | | | | | $436,047.67 | | $(21,816.89) | $8,010.00 | - |
| 3/30/2018 | | | 14.00 | Property Inspection Fee | | $70,491.84 | | | | | | $436,047.67 | | $(21,816.89) | $8,024.00 | - |
| 4/1/2018 | $2,202.87 | | | Payment Due | | $72,694.71 | | | | | | $436,047.67 | | $(21,816.89) | $8,024.00 | - |
| 4/10/2018 | | | 525.00 | FC Fees | | $72,694.71 | | | | | | $436,047.67 | | $(21,816.89) | $8,549.00 | - |
| 4/10/2018 | | | 328.98 | FC Fees | | $72,694.71 | | | | | | $435,047.67 | | $(21,816.89) | $8,877.98 | - |
| 4/13/2018 | | | | Hazard Insurance Advance | | $72,694.71 | | | $(2,309.00) | | | $435,047.67 | | $(24,125.89) | $8,877.98 | - |
| 4/26/2018 | | | 14.00 | Property Inspection Fee | | $72,694.71 | | | | | | $436,047.67 | | $(24,125.89) | $8,891.98 | - |
| 5/1/2018 | $2,202.87 | | | Payment Due | | $74,897.58 | | | | | | $436,047.67 | | $(24,125.89) | $8,891.98 | - |
| 5/29/2018 | | | 14.00 | Property Inspection Fee | | $74,897.58 | | | | | | $436,047.67 | | $(24,125.89) | $8,905.98 | - |
| 6/1/2018 | $2,202.87 | | | Payment Due | | $77,100.45 | | | | | | $436,047.67 | | $(24,125.89) | $8,905.98 | - |
| 6/15/2018 | | | 525.00 | FC Fees | | $77,100.45 | | | | | | $436,047.67 | | $(24,125.89) | $9,430.98 | - |

Mortgage Proof of Claim Attachment

[12/15]

## Part 5: Loan Payment History from First Date of Default

| | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin., int. & esc. past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6/15/2018 | | | $175.00 | FC Fees | | $77,100.45 | | | | | | $436,047.67 | | $(24,125.89) | $9,605.98 | $ - |
| 6/20/2018 | | | | Principal Curtailment | | $77,100.45 | | | | | | $436,047.67 | | $(24,125.89) | $9,605.98 | $ - |
| 6/27/2018 | | | $14.00 | Property Inspection Fee | | $77,100.45 | | | | | | $436,047.67 | | $(24,125.89) | $9,619.98 | $ - |
| 7/1/2018 | $2,202.87 | | | Payment Due | | $79,303.32 | | | | | | $436,047.67 | | $(24,125.89) | $9,619.98 | $ - |
| 7/25/2018 | | | $14.00 | Property Inspection Fee | | $79,303.32 | | | | | | $436,047.67 | | $(24,125.89) | $9,633.98 | $ - |
| 8/1/2018 | $2,202.87 | | | Payment Due | | $81,506.19 | | | | | | $436,047.67 | | $(24,125.89) | $9,633.98 | $ - |
| 8/3/2018 | | | | Payment Due | | $81,506.19 | | | $(2,575.75) | | | $436,047.67 | | $(26,701.64) | $9,633.98 | $ - |
| 8/29/2018 | | | $14.00 | Property Inspection Fee | | $81,506.19 | | | | | | $436,047.67 | | $(26,701.64) | $9,647.98 | $ - |
| 9/1/2018 | $2,202.87 | | | Payment Due | | $83,709.06 | | | | | | $436,047.67 | | $(26,701.64) | $9,647.98 | $ - |
| 10/1/2018 | $2,202.87 | | | Payment Due | | $85,911.93 | | | | | | $436,047.67 | | $(26,701.64) | $9,647.98 | $ - |
| 10/1/2018 | | | $15.00 | Property Inspection Fee | | $85,911.93 | | | | | | $436,047.67 | | $(26,701.64) | $9,662.98 | $ - |
| 10/30/2018 | | | | County Tax Advance | | $85,911.93 | | | $(2,575.75) | | | $436,047.67 | | $(29,277.39) | $9,662.98 | $ - |
| 10/31/2018 | | | $11.00 | Property Inspection Fee | | $85,911.93 | | | | | | $436,047.67 | | $(29,277.39) | $9,673.98 | $ - |
| 11/1/2018 | $2,202.87 | | | Payment Due | | $88,114.80 | | | | | | $436,047.67 | | $(29,277.39) | $9,673.98 | $ - |
| 11/2/2018 | | | $50.00 | FC Costs | | $88,114.80 | | | | | | $436,047.67 | | $(29,277.39) | $9,723.98 | $ - |
| 11/23/2018 | | | $11.00 | Property Inspection Fee | | $90,317.67 | | | | | | $436,047.67 | | $(29,277.39) | $9,734.98 | $ - |
| 11/27/2018 | $2,202.87 | | | Payment Due | | $90,317.67 | | | | | | $436,047.67 | | $(29,277.39) | $9,734.98 | $ - |
| 12/1/2018 | | | $11.00 | Property Inspection Fee | | $90,317.67 | | | | | | $436,047.67 | | $(29,277.39) | $9,745.98 | $ - |
| 12/21/2018 | | | $11.00 | Property Inspection Fee | | $92,536.34 | | | | | | $436,047.67 | | $(29,277.39) | $9,756.98 | $ - |
| 1/1/2019 | $2,218.67 | | | Payment Due | | $92,536.34 | | | | | | $436,047.67 | | $(29,277.39) | $9,756.98 | $ - |
| 1/3/2019 | | | | Hazard Insurance Advance | | $92,536.34 | | | $(1,138.00) | | | $436,047.67 | | $(30,415.39) | $9,756.98 | $ - |
| 1/22/2019 | | | | County Tax Advance | | $92,536.34 | | | $(2,442.38) | | | $436,047.67 | | $(32,857.77) | $9,756.98 | $ - |
| 1/31/2019 | | | $11.00 | Property Inspection Fee | | $92,536.34 | | | | | | $436,047.67 | | $(32,857.77) | $9,767.98 | $ - |
| 2/1/2019 | $2,218.67 | | | Payment Due | | $94,755.01 | | | | | | $436,047.67 | | $(32,857.77) | $9,767.98 | $ - |
| 2/27/2019 | | | $11.00 | Property Inspection Fee | | $94,755.01 | | | | | | $436,047.67 | | $(32,857.77) | $9,778.98 | $ - |
| 3/1/2019 | $2,218.67 | | | Payment Due | | $96,973.68 | | | | | | $436,047.67 | | $(32,857.77) | $9,778.98 | $ - |
| 3/22/2019 | | | $11.00 | Property Inspection Fee | | $96,973.68 | | | | | | $436,047.67 | | $(32,857.77) | $9,789.98 | $ - |
| 4/1/2019 | $2,218.67 | | | Payment Due | | $99,192.35 | | | | | | $436,047.67 | | $(35,300.15) | $9,789.98 | $ - |
| 4/16/2019 | | | | County Tax Advance | | $99,192.35 | | | $(2,442.38) | | | $436,047.67 | | $(35,300.15) | $9,789.98 | $ - |
| 4/29/2019 | | | $11.00 | Property Inspection Fee | | $99,192.35 | | | | | | $436,047.67 | | $(35,300.15) | $9,800.98 | $ - |
| 5/1/2019 | $2,218.67 | | | Payment Due | | $101,411.02 | | | | | | $436,047.67 | | $(35,300.15) | $9,800.98 | $ - |
| 5/31/2019 | | | $11.00 | Property Inspection Fee | | $101,411.02 | | | | | | $436,047.67 | | $(35,300.15) | $9,811.98 | $ - |
| 6/1/2019 | $2,218.67 | | | Payment Due | | $103,629.69 | | | | | | $436,047.67 | | $(35,300.15) | $9,811.98 | $ - |
| 6/20/2019 | | | $11.00 | Property Inspection Fee | | $103,629.69 | | | | | | $436,047.67 | | $(35,300.15) | $9,822.98 | $ - |
| 7/1/2019 | $2,218.67 | | | Payment Due | | $105,848.36 | | | | | | $436,047.67 | | $(35,300.15) | $9,822.98 | $ - |
| 7/25/2019 | | | | County Tax Advance | | $105,848.36 | | | $(2,872.59) | | | $436,047.67 | | $(38,172.74) | $9,822.98 | $ - |
| 8/1/2019 | $2,218.67 | | | Payment Due | | $108,067.03 | | | | | | $436,047.67 | | $(38,172.74) | $9,822.98 | $ - |
| 8/14/2019 | | | $375.00 | FC Fees | | $108,067.03 | | | | | | $436,047.67 | | $(38,172.74) | $10,197.98 | $ - |
| 8/14/2019 | | | $11.00 | Property Inspection Fee | | $108,067.03 | | | | | | $436,047.67 | | $(38,172.74) | $10,208.98 | $ - |
| 8/30/2019 | | | $11.00 | Property Inspection Fee | | $108,067.03 | | | | | | $436,047.67 | | $(38,172.74) | $10,208.98 | $ - |
| 9/1/2019 | $2,218.67 | | | Payment Due | | $110,285.70 | | | | | | $436,047.67 | | $(38,172.74) | $10,208.98 | $ - |
| 9/11/2019 | | | $100.00 | FC Costs | | $110,285.70 | | | | | | $436,047.67 | | $(38,172.74) | $10,308.98 | $ - |
| 9/27/2019 | | | $11.00 | Property Inspection Fee | | $110,285.70 | | | | | | $436,047.67 | | $(38,172.74) | $10,319.98 | $ - |
| 10/1/2019 | $2,218.67 | | | Payment Due | | $112,504.37 | | | | | | $436,047.67 | | $(38,172.74) | $10,319.98 | $ - |
| 10/10/2019 | | | $(394.70) | Fees Waived | | $112,504.37 | | | | | | $436,047.67 | | $(38,172.74) | $9,925.28 | $ - |

# A L D R I D G E | P I T E
### LLP

## PROOF OF CLAIM DISCLOSURES

### IN RE: **FARZAN, REZA aka RAY FARZAN aka RAYMOND FARZAN**
### **fdba AMERICA'S CONSULTING ENTERPRISE, INC.**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY - TRENTON DIVISION

CASE NO. 19-29256-CMG

CREDITOR: BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY
COMPANY

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. *The Principal Balance includes a deferred non-interest bearing principal balance of $75,019.30.

4375 Jutland Drive
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7600
www.aldridgepite.com

**BAYVIEW** LOAN SERVICING
P.O. Box 331409
Miami FL 33233-1409

ANNUAL ESCROW ACCOUNT
DISCLOSURE STATEMENT

Analysis Date 10/22/2019

Account Number:

Customer Service: 1-800-457-5105
Mon-Fri, 8:00 a.m. to 7:00 p.m., EST
www.bayviewloanservicing.com

REZA FARZAN

23 TWIN TER
HOLMDEL NJ 077331052

Payment from Last Escrow Analysis
Principal & Interest $1,320.46
Escrow/Impound $898.21
-----------
$2,218.67

New Payment Effective 11/1/2019
Principal & Interest $1,320.46
Escrow/Impound $980.66
-----------
**Total New Payment** $2,301.12

## PAYMENT CALCULATIONS AND ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE

For quality assurance and to comply with federal regulations, Real Estate Settlement Procedures Act (RESPA), your escrow account is reviewed at least once a year to determine that sufficient funds are available to pay your taxes and/or insurance. If the taxes and /or insurance amounts we pay from your escrow account change during the year, then the amount we are required to collect may also change. If this occurs, we suggest you contact your tax authority or insurance agent directly for an explanation of the change in your bill.

### ESCROW DISBURSEMENTS
**Current Anticipated Disbursements**
This year, we anticipate that payments from your account will equal $11,767.94

TOWN TAX $10,629.94
HAZARD INSURANCE $1,138.00

Total Disbursements $11,767.94
Escrow Payment Calculation
$11,767.94/ 12 months = $980.66

Calculation of Escrow Adjustment
Beginning Actual Balance ($38,172.74)
Beginning Required Balance $5,472.31
Bankruptcy Escrow Claim Amount $43,645.05

Projected Escrow Surplus $0.00
Please note that the "Bankruptcy Escrow Claim Amount" above is the amount that we anticipate will be paid through your bankruptcy plan for escrow advances made on your loan prior to your bankruptcy filing date. This represents the amount necessary to bring your escrow account to the "Required Balance" as of your bankruptcy filing date.

### PROJECTED ESCROW ACTIVITY FOR THE NEXT 12 MONTH ESCROW CYCLE
Your actual starting escrow balance is $5,472.31 (This starting balance is based on the assumption that all escrow advances made on your loan prior to your bankruptcy filing date are included in your Bankruptcy Plan and will be paid through your plan). According to your projected escrow activity, you are required to have a starting escrow balance of $5,472.31

| Month | Anticipated Payments to Escrow | Anticipated Payments from Escrow | Description | Required Balance | Actual Balance |
|---|---|---|---|---|---|
| | | | STARTING BALANCE | 5,472.31 | 5,472.31 |
| 11/19 | 980.66 | 2,872.59 | TOWN TAX | 3,580.38 | 3,580.38 |
| 12/19 | 980.66 | - | | 4,561.04 | 4,561.04 |
| 01/20 | 980.66 | 3,580.38 | TOWN TAX, HAZ INS | 1,961.32 | 1,961.32 |
| 02/20 | 980.66 | - | | 2,941.99 | 2,941.99 |
| 03/20 | 980.66 | - | | 3,922.65 | 3,922.65 |
| 04/20 | 980.66 | 2,442.38 | TOWN TAX | 2,460.93 | 2,460.93 |
| 05/20 | 980.66 | - | | 3,441.59 | 3,441.59 |
| 06/20 | 980.66 | - | | 4,422.25 | 4,422.25 |
| 07/20 | 980.66 | 2,872.59 | TOWN TAX | 2,530.32 | 2,530.32 |
| 08/20 | 980.66 | - | | 3,510.99 | 3,510.99 |
| 09/20 | 980.66 | - | | 4,491.65 | 4,491.65 |
| 10/20 | 980.66 | - | | 5,472.31 | 5,472.31 |
| Total | 11,767.94 | 11,767.94 | | | |

Under the Federal Law (RESPA) or applicable state law, a cushion in your escrow account is permitted (excluding MIP/PMI). The lowest (LP) required escrow balance for the next 12 months is scheduled to be $1,961.32 which is 1/6 of the anticipated escrow account installment.

This escrow analysis is based on the assumption that all escrow advances made on your loan prior to your bankruptcy filing date are included in your Bankruptcy Plan and will be paid in the plan. This analysis considers insurance, taxes and other amounts that are projected to come due after the filing of your Bankruptcy Case.

To the extent your obligation has been discharged or is subject to an automatic stay in a bankruptcy proceeding under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any payment. If you are represented by an attorney, please notify us and provide this correspondence to your attorney.

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
### ACCOUNT HISTORY

This is a statement of your actual escrow account transactions beginning January 2019 and ending October 2019. Next to the Actual Activity is the Anticipated Activity. Anticipated Activity represents the transactions we had projected as occurring during this cycle.  By comparing the actual escrow payment with the previous projections listed, you can determine where a difference may have occurred. We are providing it to you for informational purposes.  It does not require any action on your part.

Your anticipated low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| • Monthly payment(s) were received less than OR greater than expected | • Tax rate and/or assessed value changed | • Premium changed |
| • Monthly payment(s) were received earlier OR later than expected | • Exemption status lost or changed | • Coverage changed |
| • Previous overage was returned to escrow | • Supplemental/Delinquent tax paid | • Additional premium paid |
| • Previous deficiency/shortage not paid entirely | • Tax bill paid earlier OR later than expected | • Insurance bill paid earlier OR later than expected |
| • New tax escrow requirement paid | • Tax installment not paid | • Premium was not paid |
| | • Tax refund received | • Premium refund received |
| | • Force placed insurance premium paid | • New insurance escrow requirement paid |

| MONTH | PAYMENTS | | DISBURSEMENTS | | DESCRIPTION | PROJECTED ESCROW ACCOUNT BALANCE | ACTUAL ESCROW BALANCE |
|---|---|---|---|---|---|---|---|
| | PROJECTED | ACTUAL | PROJECTED | ACTUAL | | | |
| January-2019 | 898.21 | 0.00 | 2,309.01 | 2,442.38 | TOWN TAX -1ST | 2,805.42 | -31,719.77 |
| January-2019 | 0.00 | 0.00 | 1,009.00 | 1,138.00 | HAZARD INSURANCE | 1,796.42 | -32,857.77 |
| February-2019 | 898.21 | 0.00 | 0.00 | 0.00 | | 2,694.63 | -32,857.77 |
| March-2019 | 898.21 | 0.00 | 0.00 | 0.00 | | 3,592.84 | -32,857.77 |
| April-2019 | 898.21 | 0.00 | 2,309.00 | 2,442.38 | TOWN TAX -2ND | 2,182.05 | -35,300.15 |
| May-2019 | 898.21 | 0.00 | 0.00 | 0.00 | | 3,080.26 | -35,300.15 |
| June-2019 | 898.21 | 0.00 | 0.00 | 0.00 | | 3,978.47 | -35,300.15 |
| July-2019 | 898.21 | 0.00 | 2,575.75 | 0.00 | TOWN TAX -3RD | 2,300.93 | -35,300.15 |
| August-2019 | 898.21 | 0.00 | 0.00 | 2,872.59 | TOWN TAX -3RD | 3,199.14 | -38,172.74 |
| September-2019 | 898.21 | 0.00 | 0.00 | 0.00 | | 4,097.35 | -38,172.74 |
| October-2019 | 898.21 | 0.00 | 2,575.75 | 0.00 | TOWN TAX -4TH | 2,419.81 | -38,172.74 |
| **Total** | | **0.00** | | **8,895.35** | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.

Under the Federal Law (RESPA) or applicable state law, the lowest monthly escrow balance should be no less than $1,796.42 or 1/6 of the anticipated escrow account payment. Your actual lowest escrow balance was -$38,172.74.
Should you require additional information, please call our toll free number, 1-800-457-5105.

## InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE
( One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

FEBRUARY 14, 2005                    HOLMDEL                         NEW JERSEY
        [Date]                         [City]                          [State]

                            23 TWIN TERRACE,
                            HOLMDEL, NJ 07733
                            [Property Address]

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $      359,650.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
    AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.750    %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**
    (A) Time and Place of Payments
    I will make a payment on the first day of every month, beginning on       APRIL 01, 2005      . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on     MARCH 01, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at
    P. O. BOX 85302, SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.
    (B) Amount of My Initial Monthly Payments
    My monthly payment will be in the amount of U.S. $     1,723.32        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
    (C) Monthly Payment Changes
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

MULTISTATE InterestFIRST ADJUSTABLE RATE NOTE - WSJ ONE-YEAR LIBOR INDEX - Single Family - Fannie Mae Uniform Instrument

VMP-170N (0210).01          Form 3530 11/01
        VMP Mortgage Solutions (800)521-7291          237ST
Page 1 of 5

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of      MARCH 2010      , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND 250/1000      percentage points (      2.250      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than      11.750      % or less than      2.250      %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than      11.750      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund

Form 3520  11/01

170N (021.01.01)                          Page 2 of 5

by reducing the Principal I owe under the Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.00        % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Form 3530 11/01

170N 102108.01                                                Page 3 of 5

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-170N (0219).01                                    Page 4 of 5                                    Form 3830 11/01

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    REZA FARZAN _____ (Seal)
                        -Borrower                                                  -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                                  -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                                  -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                                  -Borrower

                                                                    *[Sign Original Only]*

STATE OF LOUISIANA      §

                                     §

PARISH OF OUACHITA     §

## AFFIDAVIT OF LOST NOTE



Loan Number: ███████████

Borrower's Name: Reza Farzan

I, <u>Sheena McWilliams</u>, the undersigned, being duly sworn, state as follows:

1.     I am a Vice President of JPMorgan Chase Bank, N.A. ("Chase").

2.     Chase is the custodian of the collateral documents described in paragraph 4 below (the "Loan"). Chase is the party seeking to enforce the note described below.

3.     I have access to certain of Chase's business records, including the business records of Chase and JPMorgan Chase Custody Services, Inc., a subsidiary of Chase, concerning the Loan. These records are maintained by Chase in the ordinary course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. I make this affidavit based upon my review of those records.

4.     A InterestFirst Adjustable Rate Note dated February 14, 2005, in the original principal amount of $359,650.00, with an original interest rate of 5.750% per annum, providing for initial monthly payments in the amount of $1,723.32, was executed by Reza Farzan, and secured by a Mortgage dated February 14, 2005 and recorded in the office of the County Clerk of Monmouth County, New Jersey in Book OR-8443 at Page 1637 or as Instrument no. 2005035713.

5.     Chase's regular business practice is to store original notes secured by mortgages and deeds of trust in collateral files maintained by Chase's agent, JPMorgan Chase Custody Services, Inc., in a secure vault facility in Monroe, Louisiana. After a thorough and diligent manual search of the hard copy collateral file pertaining to the loan and the credit file, which contains other documents maintained by Chase concerning the Loan, the original note was not located.

6.     The business records described above reflect that the note was in JP Morgan Chase Custody Services, Inc.'s possession at the time it was lost or destroyed.

Loan Number: ███████
Borrower's Name: Reza Farzan

7. The loss of possession is not the result of the original note being canceled or transferred to another party.

8. A copy of the InterestFirst Adjustable Rate Note is attached hereto.

JPMorgan Chase Bank, N.A.

By: _Sheena McWilliams_

Name: Sheena McWilliams

Title:  Vice President

Date: _2-12-2014_

Subscribed and sworn to before me
this _12_ day of _February_ , _2014_, by
Sheena McWilliams.

_Angela Ruth Payne_, Notary Public
Angela Ruth Payne

State of _Louisiana_

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 60422

My commission expires: Lifetime
Personally known _✓_ OR
Produced identification _N/A_ .
Type of identification produced: _N/A_

Loan Number: ███████
Borrower's Name: Reza Farzan

**Attachment 1**

Copy of InterestFirst Adjustable Rate Note